UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KRISTY H. LUPO,
an individual,

      Plaintiff,

v.

      Case No.:

EQUIFAX INFORMATION
SERVICES LLC,
a foreign limited liability company, and
TRANS UNION LLC,
a foreign limited liability company,

      Defendants.
_____/

## COMPLAINT

**COMES NOW**, Plaintiff, KRISTY LUPO (hereinafter "Plaintiff"), by and through the undersigned counsel, and hereby files this Complaint against Defendants, EQUIFAX INFORMATION SERVICES LLC (hereinafter, "Equifax") and TRANS UNION LLC (hereinafter, "Trans Union") (hereinafter collectively, "Defendants"). In support thereof, Plaintiff states:

## PRELIMINARY STATEMENT

1. This is an action brought by Plaintiff, an individual consumer, for damages for Defendants' violations of the Fair Credit Reporting Act, 15 United States Code, Section 1681 *et seq*. (hereinafter, the "FCRA") wherein Defendants each failed to establish, maintain, and follow reasonable procedures to assure maximum possible accuracy in the preparation of credit reports and credit files published by Defendants—

1

with respect to a tradeline account furnished by USAA Savings Bank (hereinafter, "USAA")—following the discharge order entered in Plaintiff's bankruptcy case. More specifically, Defendants inaccurately, incompletely, and misleadingly credit reported a tradeline account furnished by USAA as charged off without also indicating or noting that such account was included in—and discharged through—Plaintiff's voluntary bankruptcy case, all despite Defendants reporting Plaintiff's bankruptcy case as well as numerous other tradeline accounts as included in and/or discharged through Plaintiff's bankruptcy case.

2. Additionally, this is an action brought by Plaintiff for damages for Equifax's violations of the FCRA wherein Equifax failed to clearly and accurately disclose all information in Plaintiff's file or consumer report upon her request.

## JURISDICTION, VENUE & PARTIES

3. Jurisdiction of this Court arises under 28 United States Code, Section 1331 as well as pursuant to the FCRA, 15 United States Code Section 1681 *et seq*.

4. Defendants are each subject to the jurisdiction of this Court as Defendants regularly conduct business in this District.

5. Venue is proper in this District as the acts and transactions described herein originated and occurred in this District, Plaintiff filed her bankruptcy case in this District, and Plaintiff received a discharge order through her bankruptcy case in this District.

6. At all material times herein, Plaintiff is a natural person residing in Pasco County, Florida.

7. At all material times herein, Equifax is a foreign limited liability company existing under the laws of the state of Georgia with its principal place of business located at 1550 Peachtree Street, NW, Atlanta, Georgia 30309.

8. At all material times herein, Trans Union is a foreign limited liability company existing under the laws of the state of Delaware with its principal place of business located at 555 West Adams Street, Chicago, Illinois 60661.

## FCRA STATUTORY STRUCTURE

9. Congress enacted the FCRA requiring consumer reporting agencies to adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information. *See* 15 United States Code, Section 1681b.

10. Under the FCRA, whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure *maximum possible accuracy* of the information concerning the individual about whom the report relates. *Id.* at § e(b) (emphasis added).

11. Under the FCRA, any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer: in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure; for statutory damages of not less than $100 and not more than $1,000; for such amount of punitive damages as the court may allow; and for the costs of the action together with reasonable attorneys' fees. *Id.* at § n.

12. Under the FCRA, any person who is negligent in failing to comply with any requirement imposed with respect to any consumer is liable to that consumer in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure and the costs of the action together with reasonable attorneys' fees. *Id.* at § o.

## GENERAL ALLEGATIONS

13. At all material times herein, Plaintiff is an alleged "consumer" as defined by the FCRA, Section 1681a(c) because she is an individual and allegedly obligated to pay a debt.

14. At all material times herein, Defendants each credit report information concerning a consumer credit card account furnished by USAA and identified by partial account number 42- (hereinafter, the "Account").

15. At all material times herein, Equifax and Trans Union are each a "consumer reporting agency" as defined in 15 United States Code, Section 1681a(f) of the FCRA and regularly engages in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports. Equifax and Trans Union each disburse such consumer reports to third parties under contract for monetary compensation.

16. At all material times herein, Defendants acted themselves or through their respective agents, employees, officers, members, directors, successors, assigns, principals, trustees, sureties, subrogees, representatives, third-party vendors, and insurers.

17. All necessary conditions precedent to the filing of this action occurred, or Defendants waived or excused the same.

## FACTUAL ALLEGATIONS

### Plaintiff's Bankruptcy Case and Discharge Order

18. On or about June 2, 2019, Plaintiff filed a voluntary Chapter 7 bankruptcy case in the Middle District of Florida, Tampa Division, identified by case number 8:19-bk-05262-CPM (hereinafter, "Bankruptcy Case").

19. Plaintiff listed USAA in her Bankruptcy Case petition and bankruptcy schedules as an unsecured creditor with respect to the Account. Please see attached true and correct copies of relevant pages from Plaintiff's Chapter 7 Bankruptcy Petition labeled as Exhibit "A."

20. On or about June 5, 2020, the United States Bankruptcy Court electronically sent a Notice of Chapter 7 Bankruptcy Case (hereinafter, "Bankruptcy Notice") to Plaintiff's creditors. Please see attached a true and correct copy of said Bankruptcy Notice with the corresponding delivery confirmation matrix labeled as Exhibit "B."

21. On or about September 13, 2019, the United States Bankruptcy Court entered an Order of Discharge (hereinafter, "Discharge Order") in Plaintiff's Bankruptcy Case. Please see a true and correct copy of said Discharge Order labeled as Exhibit "C."

22. As such, as of September 13, 2019, the Discharge Order extinguished and eliminated Plaintiff's personal obligation with respect to the USAA Account.

### Equifax's Credit Reporting of The USAA Account and Failure to Report Account Numbers for All Tradeline Accounts

23. On or about February 10, 2020, Plaintiff obtained a copy of her credit disclosure report from Equifax. Please see attached true and correct copies of relevant pages from Plaintiff's Equifax report labeled as Exhibit "D."

24. Notably, Equifax reported Plaintiff's Bankruptcy Case in the public records section of her Equifax report and such section states "[t]he amount owed was included in the order for relief. Debtor no longer liable for debts listed in order of relief." *See* Ex. D at p. 15.

25. Additionally, on Plaintiff's report, Equifax reported *at least* nine (9) tradeline accounts included in Plaintiff's Bankruptcy Case as "Bankruptcy chapter 7," "Bankruptcy petition," and "INCLUDED_IN_BANKRUPTCY."

26. However, on Plaintiff's report, Equifax reported the USAA Account as charged off but failed to mark or otherwise notate that the Account was included in and discharged through Plaintiff's Bankruptcy Case. *Id.* at pp. 5-7.

27. Equifax reported the USAA Account as opened in 2018 with a date of first delinquency of June 1, 2018. *Id.* at p. 7.

28. Therefore, Equifax clearly knew that the USAA Account—reported as a credit card by Equifax—preceded the date of Plaintiff's Bankruptcy Case as a delinquent account and therefore should also be marked as included in and/or discharged through Plaintiff's Bankruptcy Case.

29. Without such notation, a user of Plaintiff's Equifax report could

reasonably conclude that the USAA Account was charged-off and sold to a third-party and potentially remains owing and due from Plaintiff as of February 2020.

30. After the date of the Discharge Order was entered in Plaintiff's Bankruptcy Case, Equifax prepared and published Plaintiff's credit information to her current creditors and potential lenders which included the USAA Account as a charged-off and which failed to mark the USAA Account as included in or discharged through Plaintiff's Bankruptcy Case.

31. Furthermore, Equifax failed to report an account number corresponding with the USAA Account and also failed to report any account number for eight (8) other tradelines reported by Equifax as belonging to Plaintiff.

32. Upon receipt of Plaintiff's request for her Equifax report, the FCRA, Section 1691g(a) requires Equifax to "clearly and accurately" disclose all information in Plaintiff's file at the time of her request.

33. Despite the FCRA requiring Equifax to clearly and accurately disclose all information in Plaintiff's file at the time of her request, Equifax's disclosure report dated February 10, 2020 omitted significant information contained in Plaintiff's credit file.

34. More specifically, Equifax omitted account numbers relating to nine (9) tradeline accounts. *See* Ex. D. at pp. 4-14.

35. On information and belief, each of the furnishers supplying information for the nine (9) tradeline accounts reported full account numbers to Equifax, and this information was contained within Equifax's credit file for Plaintiff.

7

36. For example, while Plaintiff's Equifax report did not show an account number with respect to the USAA Account, Plaintiff's report from Trans Union dated July 21, 2020 showed the first twelve (12) digits of the USAA Account number.

37. When Equifax produces and sells reports regarding Plaintiff to third-parties, Equifax includes the full account numbers in such reports.

38. The accuracy of Equifax's reports to third parties demonstrates its ability to comply with the FCRA, Section 1681g(a), as Equifax maintains the ability to provide a clear and accurate report containing full account numbers based on information in Plaintiff's Equifax "file."

39. The account numbers are necessary for a consumer to be able to research and evaluate the information contained in his or her credit file.

40. Equifax's failure to provide full account numbers—or even partial account numbers—diminishes a consumer's ability to compare the records on a consumer credit disclosure against other sources of information—such as billing statements and payment records—to challenge any potential errors or inaccuracies.

41. Due to widespread systemic problems, Equifax's automated systems omit the entire account numbers from certain tradeline accounts reported by data furnishers. Equifax knows of this error; however, it is cheaper not to fix the error based on Equifax's profit motive versus providing maximum possible accuracy.

42. The failure to disclose full account numbers violates the FCRA's requirement that a CRA disclose all information contained in a consumer's credit file clearly and accurately. *See*, e.g., *Washington v. Equifax*, Case No. 3:19-cv-00154 (M.D.

8

Tenn. Jun. 12, 2019).

43. Indeed, pursuant to a 2000 FTC Opinion Letter (Advisory Opinion to Darcy, June 30, 2000), "it is our view that a CRA that always scrambles or truncates account (or social security) numbers does not technically comply with Section 609 because it does not provide 'accurate' (and perhaps not 'clear') disclosure of 'all information' in the file."

44. The failure of an entity to provide accurate and truthful information as required by law creates an injury-in-fact, thus creating standing pursuant to Article III. *See*, *e.g., Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982).

### Trans Union's Credit Reporting of the USAA Account

45. On or about July 1, 2020, Plaintiff obtained a copy of her credit disclosure report from Trans Union. Please see attached true and correct copies of relevant pages from Plaintiff's Trans Union report labeled as Exhibit "E."

46. Notably, Trans Union reported Plaintiff's Bankruptcy Case in the public records section of her Trans Union report. *See* Ex. E at p. 2.

47. Additionally, on Plaintiff's report, Trans Union reported *at least* eight (8) tradeline accounts included in Plaintiff's Bankruptcy Case as "CHAPTER 7 BANKRUPTCY" and "Account Included in Bankruptcy."

48. However, on Plaintiff's report, Trans Union reported the USAA Account as charged off but failed to mark or otherwise notate that the Account was included in and discharged through Plaintiff's Bankruptcy Case. *Id*. at pp. 4-5.

49. Trans Union reported the USAA Account as opened in 2018 with

9

maximum delinquency of 120 days in September 2018 and November 2018. *Id*. at p. 4.

50. Therefore, Trans Union clearly knew that the USAA Account—reported as a credit card by Trans Union—preceded the date of Plaintiff's Bankruptcy Case as a delinquent account and therefore should also be marked as included in and/or discharged through Plaintiff's Bankruptcy Case.

51. Without such notation, a user of Plaintiff's Trans Union report could reasonably conclude that the USAA Account was charged-off and sold to a third-party and potentially remains owing and due from Plaintiff as of February 2020.

52. After the date of the Discharge Order was entered in Plaintiff's Bankruptcy Case, Trans Union prepared and published Plaintiff's credit information to her current creditors and potential lenders which included the USAA Account as a charged-off and which failed to mark the USAA Account as included in or discharged through Plaintiff's Bankruptcy Case.

## DAMAGES

53. As a result of Defendants' reporting of the Account, Plaintiff further dealt with the stress and anxiety of feeling hopeless, believing that she would be denied credit as a result of Defendants' inaccurate, incomplete, and materially misleading reporting of the Account when she needs to obtain credit in the near future, and that Plaintiff would either be denied credit or pay higher interest rates in the event she could obtain financing.

54. Further, Plaintiff suffered damage to her credit reputation as a result of

Defendants' conduct.

55. Additionally, as a result of Defendants' actions, Plaintiff suffered emotional distress, anxiety, inconvenience, frustration, annoyance, fear, and confusion, believing that she must simply endure Defendants' inaccurate, incomplete, and materially misleading reporting of the Account and could not receive the full benefit of a fresh start following the Discharge Order entered in her Bankruptcy Case.

56. Plaintiff retained Swift, Isringhaus & Dubbeld, P.A. for the purpose of pursuing this matter against Defendants, and Plaintiff is obligated to pay her attorneys a reasonable fee for their services.

## COUNT ONE:
## FAIR CREDIT REPORTING ACT –
## VIOLATION OF 15 UNITED STATES CODE, SECTION 1681e(b)
### (As to both Equifax and Trans Union)

Plaintiff re-alleges paragraphs one (1) through fifty-six (56) as if fully restated herein and further states as follows:

57. Defendants are each subject to, and both violated the provisions of, 15 United States Code, Section 1681e(b), by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files published and maintained concerning Plaintiff.

58. Equifax and Trans Union each willfully and/or negligently failed to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports regarding the discharged USAA Account.

59. More specifically, Equifax reported Plaintiff's Bankruptcy Case in the

public records section of her credit report and credit file and also reported at least nine (9) other tradeline accounts that had been discharged through Plaintiff's Bankruptcy Case as included in and/or discharged through Plaintiff's Bankruptcy Case.

60. However, months after Plaintiff received the Discharge Order in her Bankruptcy Case, Equifax continued to report the USAA Account on Plaintiff's credit reports and credit files as "charged off" yet failed to notate that the Account was included in and discharged through Plaintiff's Bankruptcy Case.

61. Also, Equifax reported the USAA Account as opened in 2018 with a date of first delinquency of June 1, 2018.

62. Therefore, Equifax clearly knew that the USAA Account—reported as a revolving credit card account by Equifax—preceded the date of Plaintiff's Bankruptcy Case as a delinquent account and therefore should also be marked on Plaintiff's credit reports as "INCLUDED IN BANKRUPTCY" and "Chapter 7 bankruptcy."

63. Similarly, Trans Union reported Plaintiff's Bankruptcy Case in the public records section of her credit report and credit file and also reported at least eight (8) other tradeline accounts that had been discharged through Plaintiff's Bankruptcy Case as included in and/or discharged through Plaintiff's Bankruptcy Case.

64. However, months after Plaintiff received the Discharge Order in her Bankruptcy Case, Trans Union continued to report the USAA Account on Plaintiff's credit reports and credit files as "charged off" yet failed to notate that the Account was included in and discharged through Plaintiff's Bankruptcy Case.

65. Also, Trans Union reported the USAA Account as opened in 2018 with

maximum delinquency of 120 days in September 2018 and November 2018.

66. Therefore, Trans Union clearly knew that the USAA Account—reported as a revolving credit card account by Trans Union—preceded the date of Plaintiff's Bankruptcy Case as a delinquent account and therefore should also be marked on Plaintiff's credit reports as included in and/or discharged through Plaintiff's Bankruptcy Case.

67. Overall, Defendants maintained credit information concerning Plaintiff and published information regarding Plaintiff to third-parties which included Defendants' inaccurate, incomplete, and materially misleading reporting of the USAA Account.

68. Defendants clearly failed to maintain procedures to maintain maximum possible accuracy. If Defendants maintained—and followed—such procedures, Defendants' reporting of the Account would be the same as the other tradeline accounts Defendants properly reported as included in Plaintiffs' Bankruptcy Case.

69. Defendants' reporting of the Account was patently inaccurate and further evidences Defendants' failure to establish or follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit reports and credit file.

70. As a result of Defendants' conduct, actions, and inactions, Plaintiff suffered damage to her credit reputation and credit worthiness, was deterred from making credit applications as she believed she would not be able to obtain favorable credit terms as a result of Defendants' reporting of the Account, did not wish to further damage her credit score with futile credit inquires, and she was continually evaluated

for credit using consumer reports that reported the Account as charged-off without also notating or indicating that such Account was included and/or discharged through Plaintiff's Bankruptcy Case.

71. Without such notation, a user of Plaintiff's Trans Union report could reasonably conclude that the USAA Account was charged-off and sold to a third-party and potentially remains owing and due from Plaintiff following the date of the Discharge Order.

72. Defendants' actions were a direct and proximate cause of, as well as a substantial factor in, the injuries, damages, and harm to Plaintiff as stated herein.

73. Defendants' violations of 15 United States Code Section 1681e(b), constitute negligent and/or willful noncompliance with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive damages, as well as attorneys' fees and costs per 15 United States Code, Sections 1681n and/or 1681o.

## COUNT TWO:
## FAIR CREDIT REPORTING ACT –
## VIOLATION OF 15 UNITED STATES CODE, SECTION 1681g(a)(1)
### (As to Equifax Only)

74. Plaintiff re-alleges paragraphs one (1) through fifty-six (56) as if fully restated herein and further states as follows:

75. Equifax is subject to, and violated the provisions of, 15 United States Code, Section 1681g(a)(1) by failing to clearly and accurately disclose all information in Plaintiff's file to Plaintiff upon receipt of her request for a consumer disclosure report.

76. More specifically, on February 10, 2020, Plaintiff requested and obtained a copy of her consumer disclosure report from Equifax.

77. Despite the FCRA requiring Equifax to clearly and accurately disclose all information in Plaintiff's file at the time of her request, Equifax's disclosure report dated February 10, 2020 omitted significant and important information contained in Plaintiff's credit file.

78. More specifically, Equifax omitted account numbers relating to nine (9) tradeline accounts.

79. On information and belief, each of the furnishers supplying information for the nine (9) tradeline accounts reported full account numbers to Equifax, and this information was contained within Equifax's credit file for Plaintiff.

80. For example, while Plaintiff's Equifax report did not show an account number with respect to the USAA Account, Plaintiff's report from Trans Union dated July 21, 2020 showed the first twelve (12) digits of the USAA Account number.

81. Equifax knowingly provided incomplete information in Plaintiff's disclosure, as it knew of these issues, which have been identified and disputed by other consumers for years.

82. Equifax's failure to provide full account numbers—or even partial account numbers—diminishes a consumer's ability to compare the records on a consumer credit disclosure against other sources of information—such as billing statements and payment records—to challenge any potential errors or inaccuracies.

83. Equifax's actions were a direct and proximate cause of, as well as a

substantial factor in, the serious injuries, damages, and harm to Plaintiff as stated herein.

84. Equifax's violations of 15 United States Code Section 1681e(b), constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n and/or 1681o.

## PRAYER FOR RELIEF

**WHEREFORE**, as a direct and proximate result of Defendants' conduct, Plaintiff respectfully requests an entry of:

    a.    Judgment against Equifax and Trans Union for maximum statutory damages for violations of the FCRA;

    b.    Actual damages in an amount to be determined at trial;

    c.    Compensatory damages in an amount to be determined at trial;

    d.    Punitive damages in an amount to be determined at trial;

    e.    An award of attorney's fees and costs; and

    f.    Any other such relief the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues triable by right.

## SPOLIATION NOTICE AND DEMAND TO RETAIN EVIDENCE

Plaintiff hereby gives notice to Defendants and demands that Defendants and their affiliates safeguard all relevant evidence—paper, electronic documents, or data—

pertaining to this litigation as required by law.

                                          Respectfully submitted,

**SWIFT, ISRINGHAUS & DUBBELD P.A.**

/s/ *Aaron M. Swift*
**Aaron M. Swift, Esq., FBN 0093088**
**Sean E. McEleney, Esq., FBN 125561**
8380 Bay Pines Blvd.
St. Petersburg, FL 33709
Phone: (727) 490-9919
Fax: (727) 255-5332
aswift@swift-law.com
smceleney@swift-law.com
jmurphy@swift-law.com

*~and~*

**THE HUBBARD LAW FIRM, PLLC**
**James R. Hubbard, Esq., FBN 121405**
120 E Pine Street, Suite 7
Lakeland, FL 33801
Phone: (863) 617-5206
lawofficeofjameshubbard@gmail.com
*Counsel for Plaintiff*